UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| FRANKENMUTH INSURANCE CO., et al., | ) ) ) |
| Plaintiffs, | ) )   Civil Action No. 5: 23-333-DCR |
| v. | ) ) ) |
| KOORSEN FIRE & SECURITY INC., et al., | ) )   **MEMORANDUM OPINION** ) )   **AND ORDER** |
| Defendants. | ) ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Koorsen Fire & Security, Inc. ("Koorsen") has moved for summary judgment on Counts I-VI of the Complaint. [Record No. 73] For the reasons explained below, the defendants' motion will be granted regarding Counts I, V, and VI, and denied regarding Counts II, III, and IV.

I.

Kentucky Orthopaedics & Spine, LLC ("Kentucky Orthopedics") is a tenant of a building located at 404 Shoppers Drive in Winchester, Kentucky. The building is owned by Grau Properties, LLC ("Grau"). Plaintiff Frankenmuth Insurance Company ("Frankenmuth") issued Insurance Policy No. 6634038 to Grau to cover the property (effective from July 9, 2022, to July 9, 2023) and Policy No. 6617328 to Kentucky Orthopedics (effective from February 28, 2022, to February 28, 2023). [*Id.*] The property was equipped with a fire alarm and fire suppression system which provided signals back to a central station monitoring company in the event of an emergency. [*Id.*] Kentucky Orthopaedics contracted with Koorsen

- 1 -

to provide services relating to the inspection, testing, maintenance, upgrading and operation of the fire suppression system and fire alarm system. [*Id.*] The system was designed, sold, installed, tested and maintained by Campbell's Home Security, Inc. ("Campbell's").

Kentucky Orthopaedics first contracted with Koorsen after the fire marshal ordered it to have its fire alarm system inspected annually. [Record No. 77-22] On September 10, 2018, Kentucky Orthopaedics entered into a contract with Koorsen, agreeing to the "Koorsen Advantage Plan" ("Advantage Plan") which provided that Koorsen would perform "Inspection Services" on the property's sprinkler and fire alarm system. [Record No. 73-3] The Advantage Plan provided for one annual inspection of the system with any necessary parts and/or repair to be invoiced separately. [*Id.*] There were no provisions within the Advantage Plan relating to the cost of parts and services for any necessary repairs. [*Id.*]

Koorsen learned during its first annual inspection that the sprinkler and fire alarm system was not functioning properly. Specifically, it realized that signals were not being sent from the system to the central monitoring system. Thereafter, on October 8, 2018, Kentucky Orthopedics signed a separate order for the repair work and Koorsen invoiced Kentucky Orthopaedics for that work on November 28, 2018. [Record No. 77-5] Koorsen continued to perform annual inspections and agreed to perform additional work as agreed through additional work orders. At least eight individual work orders were entered between the parties. [Record No. 88-1]

Koorsen performed an annual inspection on October 28, 2021, and again recommended additional repair work because the previous work had not corrected the monitoring issues. [Record No. 77-6] The work was completed on December 29, 2021, but even after these repairs, Koorsen proposed additional repairs to replace the fire alarm panel. [Record No. 77-

9] Koorsen agreed on January 28, 2022. [Record No. 77-10] However, the work was never completed. Deposition testimony establishes that the service ticket for the new panel was "released" by Koorsen on June 17, 2022, but the record does not indicate that Koorsen advised Kentucky Orthopaedics that the work would not be completed. [Record No. 77 Ex. 17] Additionally, Koorsen did not complete its annual inspection of the property in 2022.

On December 24, 2022, freezing water in the sprinkler system caused pipes to expand and crack. And at approximately 4:26 p.m., the cracked pipes released water into the building, resulting in extensive flooding. [Record No. 77] The fire alarm and sprinkler system detected the water flowing from the sprinkler system and generated local alarm signals, but did not send a signal to the central station or any local emergency response agency. [Record No. 1 at p. 24] The flooding in the unoccupied property not discovered until December 26, 2022. Both Grau and Kentucky Orthopedics incurred significant damage, resulting in both entities submitting insurance claims to Frankenmuth. Frankenmuth covered their insured's expenses, paying over $1 million to each entity. [Record No. 1 at p. 29-33]

## II.

Summary judgment is appropriate when the pleadings, discovery, and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). There is a genuine dispute regarding a material fact if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis of its motion and identifying the parts of the

record that establish the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325; *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). If the movant meets its burden, the nonmoving party must come forward with specific facts from the record to show that there is a genuine issue of material fact in dispute. *Id.* at 424.

The Court then determines "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 447 U.S. at 242. The Court construes the facts and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### III.
#### A.

Koorsen first argues Frankenmuth cannot show Koorsen breached the terms of the Advantage Plan (i.e., the contract it claims provides the basis for the parties' agreement under Counts III and IV). Frankenmuth counters that the Advantage Plan does not govern its claims because it pertains only to Koorsen's inspections and not the repair work performed pursuant to separate agreements.[1]

The dispute regarding whether the Advantage Plan covers all the work stems from page seven of the Advantage Plan where the parties selected a box which provides that "Inspection Only (parts and repair labor, if necessary, will be invoiced separately.)" [Record No. 73-3 at

---

[1] Interpreting "contracts is an issue of law for the court to decide." *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006) (*citing Morganfield Nat. Bank v. Damien Elder & Sons*, 836 S.W.2d 893 (Ky. 1992)). In its review, the Court is limited to the four corners of the agreement and "[u]nambiguous terms contained within the contract are interpreted in accordance with their ordinary meaning, 'without resort to extrinsic evidence.'" *Smith v. Crimson Ridge Development, LLC*, 410 S.W.3d 619, 621 (Ky. App. 2013).

p. 7] The Advantage Plan later states "[a]ny deficiencies or failed components or extinguishers requiring maintenance or replacement, discovered during the initial inspection are not covered by this Agreement and will be an extra charge to correct. Once corrected, these items will be covered per the Agreement." [*Id.* at p. 13]

A plain reading of these provisions demonstrates that the parties contemplated that the results of the inspections may lead to necessary repair and/ or maintenance work. The part that begins "Inspection Only" provides for separate *invoicing* for additional work, and the contract repeatedly references that this work may be necessary, but the costs will be determined later. However, the Advantage Plan does not state that the parties will enter an entirely separate agreement for the repair work, and they do not indicate any intent that a separate agreement would govern the terms of necessary repair work.

Further, the obligation to perform additional repair work comes directly from the Advantage Plan. The plan required Koorsen to inspect the premises annually, and the parties do not dispute that Koorsen fulfilled this obligation except in October of 2022 when the inspection was canceled. Throughout their dealings, the parties entered no fewer than eight work orders based on the results of the inspections, further demonstrating that the work was mandated and completed per the terms of the Advantage Plan. [Record No. 88-1]

Frankenmuth's position that the repair work was done outside of the scope of the Advantage Plan lacks merit. As discussed previously, repair work was contemplated under the Advantage Plan, and the separate Work Orders fall under the scope of the Advantage Plan. Although the plan states, "maintenance or repair discovered by the initial inspection are not covered by this Agreement and will be an extra charge to correct," the obligation to perform the additional work derives from the Advantage Plan, not the separate work orders. [Record

No. 73-3] The additional work orders obligated Kentucky Orthopaedics to pay additional fees, but they did not bind the parties to additional agreements. The terms of the Advantage Plan contemplated this work, and the parties entered at least eight separate work orders for purposes of establishing pricing. As such, the repair work was conducted in accordance with the terms of the Advantage Plan, and the parties are entitled to the protections outlined in that agreement. The Advantage Plan governs the parties' dispute.

**B.**

Frankenmuth argues that because Koorsen failed to complete the work for which it contracted (namely, the 2022 inspection before the water damage), Koorsen cannot rely on the terms of the Advantage Plan. [Record No. 77 at p. 13] Effectively, Frankenmuth takes the position that Koorsen is the first breaching party because it breached an essential term of the Advantage Plan (which it contends is a condition precedent) when it recognized the communication issues between the fire alarm panel and central station but failed to install a new fire alarm panel.

A condition precedent would include an act or event that must occur or exist before a duty to perform something that has been promised can be imposed on parties to the agreement. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC,* 540 S.W. 3d 770, 785 (Ky. 2017). If a condition precedent to contractual performance exists but is not satisfied by one party to the contract, the failure to perform excuses the obligations of the other party. *Brown at Trustee of Brown Family Trust v. Witty*, 2022 WL 2791753 (W.D. Ky. July 15, 2022). However, courts will not recognize a condition precedent "unless required to do so by plain, unambiguous language or by necessary implication." *A. L. Pickens Co. v. Youngstown Sheet & Tube Co.*, 650 F.2d 118, 121 (6th Cir. 1981).

Frankenmuth relies on language from the Advantage Plan stating: "[i]f KFS does not perform services to the satisfaction of the Customer, the Customer may elect to terminate the agreement at any time." [Record No. 73-3] This language does not explicitly establish that inspection of the alarms is a condition precedent, and the contract puts the burden on Kentucky Orthopaedics to terminate the agreement; however, the agreement was never terminated by Kentucky Orthopaedics. And while the record reflects that Koorsen performed several inspections beginning at least as early as October 8, 2018 (demonstrating compliance with the terms of the Advantage Plan), the parties do not dispute that Koorsen never completed the 2022 inspection.

Performance of the annual inspection is a material term of the contract and failure to complete it is a significant breach. Although the language of the contract does not specifically establish performance as a condition precedent, a reasonable trier of fact could find that Koorsen breached the contract and thus should not be entitled to its protection. As such, Koorsen is not entitled to summary judgment regarding Counts III and IV.

## C.

The parties dispute whether Grau, as a non-signatory to the Advantage Plan, can enforce the plan's terms. Generally, only parties to a contract can enforce and be bound by its terms. However, "some contracts anticipate third-party beneficiaries who are bound by the terms of the contract, as if they were a party." *Brown v. Mitsui Sumitomo Ins. Co.*, 492 S.W.3d 566, 573 (Ky. App. 2016). A third-party beneficiary is bound by all the terms of the contract and must accept it as it was made. *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 595 (Ky. 2012). To qualify as a third-party beneficiary, the contract must have been "made and entered into directly or primarily for the benefit of such third person." *King v. Nat'l Indus., Inc.*, 512

- 7 -

F.2d 29, 32 (6th Cir. 1975). The fact that a third party will benefit from performance of the contract "is not sufficient to entitle him to enforce it." *Simpson,* 677 S.W.2d at 307. And there is a presumption under Kentucky law that the parties to a contract did not intend to benefit a third party. *King*, F.2d at 32.

Analysis begins with the language of the agreement. *King*, F.2d at 29. The relevant provision reads:

> It is further agreed that the limitations on liability and the obligations of the customer expressed herein, shall inure to the benefit of and apply to all parent, subsidiary, and affiliated KFS companies as well as to any company which KFS may contract with to provide any of the services herein. [Record No. 73-3 at p. 13]

This language does not definitively provide for a third-party entity like Grau to be beneficiary.

Both parties cite *Peter's Clothiers v. National Guardian Security Services Corporation*, 994 F. Supp. 1343, 1345 (D. Kan. 1998), in support of their position. There, a landlord contracted for an alarm system to protect its tenant, Peter's Clothiers. The contract contained language like the Advantage Plan and the tenant pursued claims for breach of contract and negligence. The court concluded that the tenant was a third-party beneficiary, reasoning that "the store cannot accept the contract's benefits-the upgraded security system and the system's monitoring and repair-while refusing the contract's burdens-the provisions limiting liability." *Id.* at 1348.

Frankenmuth argues that, based on *Peter's Clothiers*, Grau is not a third-party beneficiary because, unlike Koorsen and Kentucky Orthopedics, the landlord in *Peter's Clothiers* discussed the proposal directly with the contractor. [Record No. 77 at p. 19] The contract also identified the tenant by name and stated that it would begin paying for and monitoring the system after the first year of service. [*Id.*] Under Frankenmuth's reading, this

- 8 -

is distinguishable from the facts here, since Grau did not have direct communication with Koorsen, and Grau was not mentioned in the Advantage Plan or the additional work orders. While this distinction is notable, it is not dispositive.

Dr. Grau, the owner of Grau Properties and Kentucky Orthopaedics, consented to the Advantage Plan and accompanying work orders. Given that the same individual owns both entities, it follows that Grau Properties was involved in the contract negotiations, and Kentucky Orthopaedics actively considered both Grau Properties' interests and its own in signing the agreement. The plaintiff's also asserts in the Complaint that "Grau, as the owner of the Property, was the intended and direct third-party beneficiary of Koorsen's contract with Kentucky Orthopedics." [Record No. 1 at p. 65, 68] Although Grau Properties was not explicitly named in the contract, the common ownership of both entities, along with Grau Properties benefiting from the new alarm system, sufficiently demonstrates that Grau Properties is a third-party beneficiary.

**D.**

Koorsen is not entitled to summary judgment on its breach of contract claims based on its failure to comply with a condition precedent and it cannot rely on the limitations of liability in the Advantage Plan. *See ADA-ED, Inc. v. Big Rivers Electric Corp.*, 502 F. Supp. 3d 1199, 1211 (W.D. Ky. 2020) (finding the first party to commit a material breach cannot complain of subsequent nonperformance by the opposing party and the nonbreaching party is excused from further performance). However, if a jury were to find that Koorsen had complied with the condition precedent, it would be able to enforce the Advantage Plan's limitations of liability.

Generally, "a party cannot contract away liability for damages caused by that party's failure to comply with a safety statute." *Cumberland Valley Contractors, Inc. v. Bell Cnty.*

*Coal Corp.*, 238 S.W.3d 644, 651 (Ky. 2007) (*quoting Hargis v. Baize*, 168 S.W.3d 36, 47 (Ky. 2005); *Martin County Coal Corp v. Universal Underwriters Ins. Co.*, 727 F.3d 589 (6th Cir. 2012) (an indemnity agreement seeking to shift liability for violations of federal mining regulations was unenforceable under Kentucky law).  However, a party can limit its liability for safety violations if: (1) it specifically negotiates to limit or shift liability; (2) the parties are in equal bargaining position; and (3) neither were compelled to obtain a necessity.  *Martin County*, 727 F.3d at 596.

At issue is the exculpatory clause in the Advantage Plan that provides Koorsen shall not be held liable for defects in its products or, in the alternative, Koorsen's liability will be limited to $500.  Specifically,

> [t]he customer does not desire this contract to provide for full liability of KFS and agrees that KFS shall be exempt from liability for loss, damage or injury due directly or indirectly to occurrences or consequences therefrom which the Product or Service is designed to detect or avert . . . if KFS should be found liable for loss damage or injury due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to 10% of the annual service charge or $500, whichever is greater.  [Record No. 73-3]

Kentucky Courts have held an exculpatory clause does not violate public policy if: (1) it explicitly expresses an intention to exonerate by using the word "negligence;" (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision.  *USAA v. ADT Sec. Servs. (South), Inc.*, 241 S.W.3d 335, 342 (Ky. App. 2006).  Courts have also recognized a preference for a policy of freedom of contract

and reasoned that "denying the enforceability of such limitation-of-liability contracts may well result in prohibitively expensive alarm systems." *Id.* at 342.

Frankenmuth argues that the exculpatory provision is not enforceable because it allows Koorsen to avoid liability for violating a safety code. But this is not the standard for evaluating the enforceability of an exculpatory provision. And the factors listed in *ADT Sec. Servs. (South), Inc.*, weigh in Koorsen's favor. First, the Advantage Plan is clear in its use of "negligence" with the relevant provision prefaced by the phrase "the provision of this paragraph should apply if loss . . . results . . . from negligence." [Record No. 73-3] Second, the intent of the Advantage Plan is clear in that is provides that the customer "releases . . . KFS . . . from any and all . . . liabilities . . ." [Record No. 73-3] This language is not subject to any other reasonable interpretation, and the damage incurred by Grau and Kentucky Orthopaedics was the type contemplated by the parties at the time of the contract's formation.

Frankenmuth relies on *Davis H. Elliott Constr. Co. v. High Voltage Maint. Corp.*, 2025 U.S. Dist. Lexis 59763 (March 31, 2025), for the proposition that Kentucky law generally prohibits enforcing contracts that shift liability from those who violate safety codes. However, the *Davis* court ultimately found that the subject provision to be enforceable because the parties had equal bargaining power, and the dispute pertained to purely economic loss. These factors weigh in favor of enforcing the Advantage Plan.

Here, there is no significant disparity in the parties' bargaining power. While it appears that Kentucky Orthopedics does not have expertise in fire alarms, there is "no major disparity in bargaining power between the parties." *Cumberland Valley* at 653. And had Grau objected to these provisions, he could have negotiated to change the terms. Further, at least one Kentucky court has reasoned that there is no major disparity in bargaining power if the less

sophisticated party can turn to a competitor for similar products or services. *See Smith v. Phoenix Invs., LLC,* 2008 WL 3551178, 2008 Ky. App. Unpub. LEXIS 7, 6-7 (Aug. 15, 2008). And as was the case in *Davis H. Elliott Constr. Co.,* this case involves economic loss, not personal injury. In summary, Koorsen has adequately demonstrated that the challenged limitation of liability is not contrary to public policy.

Finally, the Advantage Plan contains a liquidated damages clause that limits Koorsen's liability to the insureds. Under Kentucky law, "a contract term providing for liquidated damages will be enforced, provided in it in actuality liquidated damages and not a penalty." *Goetz v. Asset Acceptance, LLC*, 513 S.W. 3d 342, 346 (Ky. App. 2016). In this case, the clause limits Koorsen's liability for any loss to "10% of the annual service charge or $500, whichever is greater. [Record No. 73-3 at p. 13] Given that the annual service charge is $1,000, the greater amount is $500. Thus, the maximum amount plaintiffs can recover is $500.

### IV.
### A.

Koorsen also argues that it is entitled to summary judgment regarding Frankenmuth's claims because it did not owe a duty to Kentucky Orthopaedics independent of its contractual obligations. To prove negligence under Kentucky law, a plaintiff must demonstrate that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached the duty; and (3) the breach caused damages. *Walmart, Inc. v. Reeves*, 671 S.W.3d 24, 26 (Ky. 2023). "If no duty is owed by the defendant to the plaintiff, there can be no breach thereof, and therefore no actionable negligence." *Ashcraft v. Peoples Liberty Bank & Trust Co., Inc.,* 724 S.W.2d 228, 229 (Ky. App. 1986).

A key difference between a claim for breach of contract and one for negligence is the source of the defendant's duty. "A plaintiff may bring both a breach-of-contract and negligence claim only when the negligence claim is based on the breach of some duty independent of the contractual obligations between the parties." *Loxodonta Aviation, LLC v. Delta Private Jets, LLC*, 2020 WL 4516829, *1-2 (E.D. Ky. Aug. 5, 2020) (*citing Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 791–92 (Ky. 2017). Thus, a party to a contract seeking to prevail on a negligence theory must "identify a duty owed . . . that is independent of [contractor's] contractual obligations. *Id.* at 5; *see also Nelson v. Columbia Gas Transmission*, 808 F. App'x 321, 330 (6th Cir. 2020) (applying Kentucky law to affirm dismissal of the plaintiff's negligence and trespass claims as "contract claims repackaged as tort claims," finding no independent legal duty outside the parties' contractual obligations).

When considering whether there is an independent duty outside of any of the contract's obligations, "[a] duty voluntarily assumed cannot be carelessly undertaken without incurring liability therefore." *Estep v. B.F Saul Real Estate Inv. Trust*, 843 S.W.2d 911, 914 (Ky. App. 1992). In *Louisville Gas & Electric Co. v. Roberson,* 212 S.W.3d 107 (Ky. 2006), the Supreme Court of Kentucky adopted the "so-called 'undertaker's doctrine' as set forth in the Restatement (Second) of Torts, § 324A(b)." *Roberson,* 212 S.W.3d at 111. In relevant part, § 324A provides that "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking." § 324A of the Restatement (Second) of Torts § 324(A) (1965).

Frankenmuth contends that Koorsen owed an independent duty both to Grau and Kentucky Orthopedics. First, concerning the alleged duties Koorsen owed to Grau Properties, Koorsen argues that the sole source of its duties is its contractual undertakings under the Advantage Plan. But Frankenmuth alleges that § 324A is applicable as it imposes liability to third parties when an individual fails to exercise reasonable care in performing an undertaking. [Record No. 77 at p. 21] In support, Frankenmuth correctly contends that as long as there has been harm, a plaintiff can show that a tort duty has been breached as "[i]t is quite elementary that a duty to exercise the proper degree of care may have its origin, as here, in a contract." *Roberson,* 212 S.W.3d at 111. As such, Frankenmuth does not have to establish a duty outside of the Advantage Plan.

The Court has already determined that Grau Properties is a third-party beneficiary of Koorsen's work under the Advantage Plan because the annual inspections and repairs of the alarm system directly benefited Grau. Under Section 324A, Grau can show that as a third-party beneficiary, Koorsen owed Grau a duty of reasonable care in its repair and inspection efforts, independent of any contractual relationship. Thus, Koorsen is not entitled to summary judgment on Count II.

Regarding Koorsen's alleged duties to Kentucky Orthopaedics, Frankenmuth takes the position that "Kentucky follows the common law rule that 'a duty voluntarily assumed cannot be carelessly undertaken without incurring liability therefore." [Record No. 77 at pgs. 22-23] *citing Estep v. B.F. Saul Real Estate Inv. Trust*, 843 S.W.2d 911, 914 (Ky. App. 1992). Thus, it alleges that Kentucky has implicitly adopted § 323 of the Second Restatement of Torts, which holds that "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or

things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care." § 323 of the Restatement (Second) of Torts § 323 (1965).  However, there is little Kentucky precedent in this area.  And when faced with a similar issue in *Grubb v. Smith*, 523 S.W.3d 409, 412 (Ky. 2017), the Supreme Court of Kentucky found "it has never been the law in Kentucky that, outside a small number of exceptions, one has a duty, much less a "universal duty," to protect others from dangerous conditions that one has not caused or created." *Id.* at 426.  As such, any duty Koorsen owed to Kentucky Orthopaedics derives from the Advantage Plan.  Since the Court declines to adopt § 323 of the Second Restatement of Torts and find that Koorsen owed Kentucky Orthopaedics a general duty, Koorsen is entitled to summary judgment on Count I of the Complaint.

**B.**

Frankenmuth also argues that the exculpatory terms and conditions in the contract are not enforceable because Koorsen actions constitute willful and wanton negligence.[2] Exculpatory clauses are generally enforceable for "negligence and even gross negligence short of willfulness and wantonness."  *Helmbrecht v. Bailey Jaynes Bakery and Café,* LLC, 699 S.W. 197, 203 (Ky. App. 2024) *citing Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 654 (Ky. 2007).  The burden to establish that negligence is willful or wanton is high because it "signifies the entire absence of care for the life, person or property of others with an element of conscious disregard of the rights or safety of others, which deserves extra punishment in tort."  *Id.*

---

[2] Although the Court has determined Frankenmuth cannot hold Koorsen liable under a negligence theory regarding Kentucky Orthopaedics, the Court will address Frankenmuth's arguments that Koorsen acted with willful and wanton negligence, which it raised for the first time in its response to Koorsen's motion for summary judgment.

- 15 -

Here, Frankenmuth contends that Koorsen knew the fire alarm system had not been functioning properly since at least 2018. [Record No. 77 at p. 23] And notwithstanding this knowledge and its understanding the importance of immediately correcting the defect, Koorsen failed to install a new fire alarm panel. Frankenmuth contends this is particularly egregious conduct because Kentucky Orthopaedics agreed to Koorsen's recommendations and authorized Koorsen to install a new fire alarm panel in January 2022. Nevertheless, Koorsen did not replace the panel and canceled its annual fire alarm inspection scheduled for October 2022. [Record No. 77 at p. 24] Frankenmuth contends that this is not a "relatively innocent tortfeasor's single act of negligence" and that Koorsen, as a professional company specializing in fire safety, understood the consequences of its actions and demonstrated complete indifference to those consequences. [Record No. 77 at p. 24]

While Koorsen's actions may demonstrate carelessness, Frankenmuth cannot simply recategorize its claim of simple negligence to one of willful and wanton conduct at this stage in the proceedings. Frankenmuth has brought claims under Count I and Count II alleging Koorsen was negligent in the work it performed for Kentucky Orthopaedics and Grau Properties, but there is nothing in the Complaint alleging willful or wanton negligence. As such, willfulness and wantonness are not in dispute, and Frankenmuth cannot at this point claim Koorsen acted with this level of indifference.

### V.

Koorsen argues it is entitled to summary judgment on Counts V and VI of the Complaint because the implied warranty of workman like services does not apply to contracts with alarm contracts such as Koorsen. But to the extent it does, Kentucky Orthopaedics and Grau Properties waived their rights to pursue these claims in the Advantage Agreement.

Generally, the implied warranty of workmanlike service is a warranty that applies to builders of real property. *Pippin v. Owensboro Master Builder, Inc.*, 2018 WL 4262791, 2018 Ky. App. *11 (Ky. App. Sept. 7, 2018). The warranty protects purchasers of new structures to ensure that dwellings are "constructed in a workmanlike manner and using suitable materials." *Id.*

Koorsen installs alarms. The work undertaken by Koorsen only pertained to the alarm and sprinkler system, and not the main structure of the building. Even without considering whether Koorsen can be held liable under the Advantage Plan given the contract's language that "[Koorsen] makes no guaranty or warranty which extends beyond the description on the face hereof, including any implied warranty of merchantability or fitness . . .", the implied warranty of merchantability does not apply to this type of work. [Record No. 73-3] Thus, summary judgment will be granted on Counts V and VI of the Complaint.

### VI.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant Koorsen Fire & Security, Inc.'s motion for summary judgment [Records No. 73] is **GRANTED** in part and **DENIED** in part. The claims asserted by Plaintiff Frankenmuth against Defendant Koorsen in Counts I, V, and VI are **DISMISSED**. Counts II, III, and IV remain pending for resolution.

Dated: July 11, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky